IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE TELLADO AND MARIA TELLADO,<br>　　　　　　　Plaintiffs,<br>　　v.<br>INDYMAC MORTGAGE SERVICES,<br>*a division of OneWest Bank, FSB*,<br>　　　　　　　Defendant. | CIVIL ACTION<br><br>NO.  09-5022 |

MEMORANDUM

**Tucker, J.**                                                                                             **July \_\_\_, 2011**

　　　　After a bench trial in this matter on November 8, 2010, and pursuant to Fed. R. Civ. P. 52(a), the Court makes the following Findings of Fact:

　　1.　　This is an action for damages in connection with the mortgage refinancing services received by Plaintiffs, Jose and Maria Tellado, for their residential real property located at 519 Morris Street, Philadelphia, Pennsylvania (the "Property").

　　2.　　Plaintiffs, who are husband and wife, are also low-income senior citizens who speak primarily Spanish.

　　3.　　On or around June 2007, Plaintiff Jose Tellado heard a Spanish-language radio advertisement for mortgage refinance services.  Plaintiff Mr. Tellado called the telephone number provided in the advertisement and reached a man named Carlos Enrique, and the two conversed exclusively in Spanish.

　　4.　　Mr. Enrique assisted Plaintiff Jose Tellado with the submission of a loan application.  Mr. Enrique also arranged for a closing agent to visit the Tellado home with the loan

documents.

5. On July 3, 2007, Mr. Philip Bloom, a closing agent and notary, came to the Property with the loan documents. Mr. Bloom acted as a representative of Indymac Bank, F.S.B., and had been provided instructions on how to conduct the loan closing. Plaintiffs received a copy of these instructions.

6. Plaintiffs saw the final loan terms for the first time in their home at closing.

7. The loan transaction, from the initial contact with Mr. Enrique until the loan closing, was conducted in Spanish.

8. The loan documents provided at the loan closing, including the Note, the Mortgage, and the Notice of Right to Cancel, were provided in English.

9. One of the loan documents received by the Plaintiffs was a Notice of Right to Cancel, a model form mandated by the Truth in Lending Regulation Z, referenced in section 226.23 of title 12 of the Code of Federal Regulations, Appendix H.

10. Plaintiffs' daughter, Marcelina Fuster, was present at the closing, at the suggestion of Mr. Enrique, to act as an interpreter. She assisted in translating the closing agent's verbal instructions, as well as his explanations of the loan documents, from English to Spanish for the Plaintiffs. Ms. Fuster did not have the opportunity to read, nor to translate the loan documents themselves.

11. Plaintiffs are unable to read English and did not understand the contents of the documents that they were signing at closing. At the time of the closing, Plaintiffs had the intention of entering into a fixed rate mortgage. Plaintiffs were unaware that the first ten years of payments under the loan would not be applied to the principal, that the loan had an adjustable rate, or that the loan documents contained falsified information concerning their monthly income.

12. In connection with the July 3, 2007 transaction, Plaintiffs purchased the mortgage refinancing services for a price in excess of $25. The original lender in this transaction was Indymac Bank, F.S.B.

13. Subsequently, on July 11, 2008, Indymac Bank, F.S.B. went into receivership, and the Federal Deposit Insurance Corporation (FDIC) was appointed its receiver. As a result, certain assets and liabilities of Indymac Bank, F.S.B., including the Plaintiffs' mortgage loan, were transferred to Indymac Federal Bank, F.S.B., for which the FDIC served as conservator.

14. Under a Master Purchase Agreement (the "MPA") dated March 18, 2009, Defendant OneWest Bank, FSB ("OneWest Bank"), acquired the Plaintiffs' loan, formerly held by Indymac Bank, F.S.B., from the FDIC.

15. In the MPA, Defendant agreed to assume certain liabilities associated with loans acquired from the FDIC. In Section 4.02 of the MPA, there are enumerated certain liabilities that the Defendant did not assume, however, such excluded liabilities are unclear, as Schedule 4.02(a) referenced in the MPA detailing excluded liabilities was not provided to the Court.

16. On August 5, 2009, Plaintiffs sent a Notice of Cancellation to Indymac Mortgage Services, a division of Defendant OneWest Bank, alerting the entity of Plaintiffs' intention to file suit if a favorable response was not received within ten (10) days.

17. OneWest Bank failed to provide any response to the Notice of Cancellation within (10) ten days after receiving such notice. OneWest Bank responded to Plaintiffs in a letter dated October 15, 2009, denying Plaintiffs' request to rescind the mortgage loan transaction.

18. After commencing this action on August 24, 2009, Plaintiffs began escrowing their

monthly payments.

19. Plaintiffs ceased escrowing payments upon receipt from OneWest Bank of a Notice of Intention to Foreclose. Plaintiffs continued to make monthly payments to prevent foreclosure on the Property during the pendency of this action.

20. As of November 8, 2010, the bench trial date in this matter, Plaintiffs were up to date on their payment obligations under the loan at issue.

21. Plaintiffs seek:

   a) Determination that the mortgage on their home is void following their submission to OneWest Bank of a notice of cancellation, as required under 73 P.S. § 201-7(g).

   b) Determination that, by failing to honor the Notice of Cancellation and inform Plaintiffs of their intent to collect the proceeds of the loan within ten (10) business days as required under 73 P.S. § 201-7 (g), OneWest Bank has forfeited the right to any further payment.

   c) If the mortgage is not cancelled, Plaintiffs seek in the alternative triple damages based on the amount of refunded payments they would have received, and the security instrument that would have been terminated if Defendant had taken the appropriate steps to cancel the loan as follows:

      i) Triple damages based on the amount of payments made by Plaintiffs to date, at least $30,043.36, for a total of $90,130.08, pursuant to 73 P.S. § 201-9.2(a).

      ii) Actual damages in the amount of the security instrument that OneWest failed to terminate, and which OneWest retains as a lien against Plaintiff's home, in the amount of $115,000.00, pursuant to

73 P.S. § 201-9.2(a).

### Conclusions of Law

A. **Plaintiffs Asserted a Valid Claim for Damages Arising From OneWest's Failure to Cancel the Mortgage Transaction**

1. A Federal Law Preempts only State Law Directly in Conflict with the Scope of Such Federal Law

    a) Generally, the law of preemption, which has its roots in the Supremacy Clause, dictates that federal law preempts state law when Congress has shown intent to create federal regulation in a particular field so pervasive as to leave no room for state supplementation.

    b) Pursuant to 12 C.F.R § 545.2, The Office of Thrift Supervision (OTS) has the "plenary and exclusive power . . . to regulate all aspects of the operations of Federal savings associations, as set forth in section 5(a) of the [Home Owners Loan] Act. This exercise of the Office's authority is preemptive of any state law purporting to address the subject of the operations of a Federal savings association."

    c) The OTS, however, makes an exception for, *inter alia*, state contract and commercial laws which only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purpose of the regulation. 12 C.F.R. § 560.2(c)(1).

    d) While the Third Circuit has not yet ruled on the preemptive relationship between the Home Owners Loan Act ("HOLA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-7 ("UTPCPL"), the Southern District of New York held that the New York Consumer Fraud

|     | |
| --- | --- |
|  | Statute is not directly aimed at lenders, and has only an incidental impact on lending relationships without creating any conflict with the federal objectives identified in 12 C.F.R. § 560.2. <u>Binetti v. Wash. Mut. Bank</u>, 446 F. Supp. 2d 217 (S.D.N.Y. 2006). |
| e) | In <u>Binetti</u>, the Southern District of New York pointed to a December 24, 1996, OTS opinion which concluded that the New York Consumer Fraud Statute is the type of commercial law designed to "establish the basic norms that undergird commercial transactions" that the OTS has indicated it does not intend to preempt. <u>Id</u>. at 219. |
| f) | A state law that generally dictates the underpinnings of fair trade practices is distinguishable from a state law that is directly aimed at lenders, which courts have consistently held to be preempted by HOLA and similar federal acts. *See* <u>Binetti v. Wash Mut. Bank</u> at 220 (citing <u>1999 OTS LEXIS 4</u>). |
| g) | The Court, finding <u>Binetti</u> instructive, holds that the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") governs the customs and practices surrounding commercial transactions generally, and thus is not preempted by HOLA. |
| h) | Similarly, the UTPCPL is not preempted by the Truth in Lending Act. |
| I) | The Truth in Lending Act preempts state law only where the state law is in conflict.  <u>Jamal v. WMC Mortg. Corp.</u>, 2005 U.S. Dist. LEXIS 5076 (E.D. Pa. Mar. 28, 2005). |
| j) | As noted in <u>Jamal</u>, "the TILA provides in relevant part at 15 U.S.C. § 1610(a)(1), |

'Except as provided in subsection (e) of this section [relating credit and

6

        charge card application and solicitation disclosures], this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency… .'"

  k)    The Court in <u>Jamal</u> further notes that, "[s]imilarly, Regulation Z, 12 C.F.R. § 226.28(a) states in pertinent part:

        'Inconsistent disclosure requirements. (1) Except as provided in paragraph (d) of this section [relating to special rule for credit and charge cards], state law requirements that are inconsistent with the requirements contained in chapter 1 (General Provisions), chapter 2 (Credit Transactions), or chapter 3 (Credit Advertising) of the act and the implementing provisions of this regulation are preempted to the extent of the inconsistency… .'"

  l)    The Truth in Lending Act, which focuses on consumer credit disclosures, is not preempted by the UTPCPL, a state law only which generally governs commercial transactions, and is not aimed at federal consumer credit practices.

2.    Plaintiffs have a valid claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-7 (UTPCPL) against OneWest Bank.

  a)    The loan transaction which Plaintiffs entered into on July 3, 2007 is governed by the door-to-door sales provisions of the UTPCPL. 73 P.S. § 201-7.

  b)    Under 73 P.S. § 201-7, the right to cancel is afforded "to any consumer who agrees to purchase goods or services with a value of $25 or more 'as a result

        of or in connection with' contact between the seller and the consumer at the consumer's home." Burke v. Yingling, 446 Pa. Super. 16, 21 (1995).

c) At trial, the Court determined that OneWest Bank qualifies as a seller within the definition of the UTPCPL.

d) In this case, the service provided, mortgage refinancing, had a value of well over twenty-five dollars ($25).

e) Additionally, such services were contracted as a result of contacts between the Plaintiffs and OneWest Bank at Plaintiffs' residence, including a telephone call placed by Mr. Tellado from his home, and the loan closing which occurred at the residence. Thus, as in Fowler v. Rauso, 425 B.R. 1657 (Bankr. E.D. Pa. 2010), the contacts made at the residence of the consumers result in this transaction falling within the scope of 73 P.S. § 201-7.

e) Under the door-to-door sales provision of the UTPCPL, at the time of the sale or contract the buyer shall be provided with a notice of cancellation written in the same language as that principally used in the oral sales presentation and also in English. 73 P.S. § 201-7(b).

f) The buyer shall also be informed in the notice to cancel that he may avoid the contract or sale by providing the seller with a written notice of cancellation within three business days after the date of the transaction. 73 P.S. § 201-7(b).

g) IndyMac Bank, F.S.B., the original mortgagee, did not provide any documents in Spanish, the language of the sales presentation, nor did IndyMac Bank, F.S.B. provide additional notifications of the right to cancel within three business days near the signature line of the Note or Mortgage, as required

<blockquote>

by the UTPCPL.   73 P.S. § 201-7(b).

h) Thus, IndyMac Bank F.S.B., a division of OneWest Bank, failed to provide proper notice of Plaintiffs' right to cancel the transaction under the UTPCPL.

i) Further, the door-to-door sales notice to cancel requirements of the UTPCPL are not preempted by HOLA because they only incidentally affect the lending operations of OneWest and are consistent with the purpose of the HOLA.

j) The Court finds that "[t]he UTPCPL is a law of general applicability, and not targeted directly at banking or lending." Poskin v. TD Banknorth, N.A., 687 F. Supp. 2d 530 (W.D. Pa. 2009).

k) While the Third Circuit has not issued a ruling directly addressing the issue at hand, courts within the Ninth Circuit have provided some guidance.

l) In Reyes v. Premier Home Funding, Inc., 640 F. Supp. 2d. 1147 (N.D.Cal. 2009), the Court considered HOLA's preemption of the California Translation Law (CTA), which requires that a translation of a contract or agreement be provided in the language in which the contract or agreement was negotiated. The Court held that the CTA was not preempted by HOLA because it did not require any specific statements, information or other content to be disclosed and because it only affects lending *incidentally*. Id. at 1155 (emphasis added).

m) Reyes, as well as the case at issue, is distinguishable from several other Ninth Circuit cases which called for federal preemption of state regulations.

n) Where the state regulation in question regards specific processing, servicing, or disclosure policies or concerns the substantive financial terms

</blockquote>

      of the loan, preemption has been deemed necessary. See Parcray v. Shea Mortg., Inc., 2010 WL 1659369 (E.D. Cal. Apr. 23, 2010)(concluding that HOLA preempts Cal. Civ. Code § 2923.5 because it "concerns the processing and servicing of [the plaintiff]'s mortgage"); Odinma v. Aurora Loan Servs., 2010 WL 1199886 (N.D. Cal. Mar. 23, 2010); Murillo v. Aurora Loan Servs., LLC, 2009 WL 2160579 (N.D. Cal. July 17, 2009); Silvas v. E*Trade Mortg. Corp., 421 F. Supp. 2d 1315 (S.D. Cal., 2006) (concluding that where federal law preempts an "entire field," a state's provision of remedies for a violation of federal law amounts to a form of state regulation of the affected area and is thus preempted).

  o)    As in Reyes, the Court finds that notice of right to cancel in this matter was incidental to the larger mortgage refinancing transaction, and thus is not preempted by HOLA or TILA, as discussed above.

**B.  Plaintiffs Fulfilled their Burden of Proof and are Entitled to Damages under the PA UPTCPL**

1. The cancellation period provided for in 73 P.S. § 201-7(e) shall not begin to run until buyer has been informed of his right to cancel and has been provided with the required copies of the "Notice of Cancellation."

2. Because Plaintiffs never received the proper notification of their right to cancel under the UTPCPL, the cancellation period provided for in 73 P.S. § 201-7(e) had not begun to run at the time Plaintiffs sent a Notice of Cancellation to Defendant on August 5, 2009.

3. Because no valid notice of cancellation was issued to Plaintiffs, Plaintiffs' Notice of

>   Cancellation was sent within the required time constraints pursuant to 73 P.S. § 201-7(g).  Plaintiffs are not required to show actual losses for remedies to be triggered under 73 P.S. § 201-7(g)

4. Relief granted to Plaintiffs shall be as follows:

   a) Defendant OneWest Bank shall refund all payments made under the contract, cancel and return any negotiable instrument executed by the Plaintiffs in connection with the mortgage refinancing, and take any action necessary or appropriate to terminate promptly any security interest created in the mortgage refinancing transaction.  73 P.S. § 201-7(g).

   b) Under 73 P.S. § 201-9.2(a), the Court may, in its discretion, award up to three times the actual damages sustained [due to "deceptive practices", as statutorily defined], but not less than one hundred dollars ($100).  The Court may provide such additional relief as it deems necessary or proper.

   c) Because the acts in question do not rise to the level of unlawful deceptive practices required under 73 P.S. § 201-9.2(a), the Court declines to award damages permissible under this section.

An appropriate order follows.

>                                   BY THE COURT:
>
>                                   /s/ Petrese B. Tucker
>                                   _____
>                                   Hon. Petrese B. Tucker, U.S.D.J.